IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM GREEN and JOANN GREEN, | ) ) ) | 8:09CV13 |
| Plaintiffs, | ) ) ) | |
| | ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| SUNSET FINANCIAL SERVICES, INC., KANSAS CITY LIFE INSURANCE COMPANY, and BRYAN S. BEHRENS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the Motions to Dismiss (Filing Nos. 23 and 30) submitted by Defendants Sunset Financial Services, Inc. ("Sunset") and Kansas City Life Insurance Company ("KC Life"). Also before the Court is Sunset's Request for Judicial Notice (Filing No. 25) and Plaintiffs William Green and JoAnn Green's Motion for Leave to Amend if the Court Grants Defendants' Motions to Dismiss (Filing No. 40). The issues have been fully briefed.

## BACKGROUND

For purposes of the pending motion to dismiss, this Court accepts as true the factual allegations in the Complaint (Filing No. 1), although the Court is not bound to accept Plaintiffs' legal conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

The Plaintiffs William Green and JoAnn Green are citizens of the State of Nebraska. (Amended Complaint, Filing No. 1, ¶¶ 4, 5). Defendant KC Life, a Missouri corporation with its principal place of business in Missouri, is licensed with the Nebraska Department of Insurance. (*Id.* at ¶ 7). Sunset, a Washington corporation with its principal place of business in Missouri, is a wholly-owned subsidiary of KC Life. (*Id.* at ¶ 6). Sunset is a

broker-dealer registered with the Securities and Exchange Commission ("SEC") and is authorized to conduct business in Nebraska.  (*Id.*).  Defendant Bryan S. Behrens ("Behrens") was a citizen of the State of Nebraska at the time the original Complaint was filed.  (*Id.* at ¶ 8).  He was an agent of KC Life and a registered representative of Sunset.  (*Id.*).  Behrens was also the President and CEO of 21st Century Financial Group, Inc. ("21st Century"), which operated as a branch office of Sunset.  (*Id.*).

Plaintiffs allege that William Green invested $1, 035,722 on February 1, 2006, with Behrens.  (*Id.* at ¶ 4).  Plaintiffs further allege that JoAnn Green invested $140,000.00 with Behrens on April 12, 2007.  (*Id.* at ¶ 5).  The written promissory notes,[1] including an amended note dated April 10, 2006, with respect to William Green's investment, were signed by Behrens on behalf of the borrower, National Investments, Inc. ("National Investments"), an entity controlled by Behrens and incorporated under the laws of Nevada.[2]  (*Id.* at ¶¶ 4, 14).  According to Plaintiffs, no written offering documents were prepared and Behrens made only oral representations to Plaintiffs about how the money would be invested.  (*Id.* at ¶ 15).  Behrens allegedly told Plaintiffs that Behrens would make safe investments with the money that would result in a steady stream of income for Plaintiffs.  (*Id.* at ¶ 16).

---

[1] Sunset has filed copies of the promissory notes in an Index filed in support of its Request for Judicial Notice.  The promissory note copies are found at Filing No. 26-3.

[2] According to Plaintiffs, the corporate charter of National Investments was revoked by the Nevada Secretary of State on December 1, 2006.  (Complaint, Filing No. 1, ¶ 13).

Plaintiffs allege that Behrens did not invest Plaintiffs' money but instead perpetrated a fraudulent Ponzi scheme.[3]  (*Id.* at ¶¶ 13, 17). According to Plaintiffs, Behrens "misappropriated the funds for his personal use, spent the money in other ways, or simply transferred money among the Plaintiffs and other investors to prevent them from discovering the fraud."[4] (*Id.* at ¶ 17).  Plaintiffs first became aware of the allegations of fraud against Behrens when the SEC filed a lawsuit in this Court against Behrens in January of 2008.[5] (*Id.* at ¶ 19).  Plaintiffs contend that they would not have invested with Behrens had they known "the truth about Behrens's scheme." (*Id.* at ¶ 18).

According to Plaintiffs, KC Life is authorized by the Nebraska Department of Insurance to offer "sickness and accident insurance, life insurance, variable life insurance, and variable annuities." (*Id.* at ¶ 7).  KC Life offers mutual funds and additional investment options through its subsidiary, Sunset. (*Id.*).  Sunset is marketed by KC Life as a "trusted financial advisory firm" and both assert their agents and representatives "can be trusted in matters involving financial advice." (*Id.* at ¶¶ 23, 26). Plaintiffs contend that Sunset and KC Life had a duty to supervise Behrens, and that by violating that duty to supervise, they

---

[3]A Ponzi scheme is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." Black's Law Dictionary 1198 (8th ed. 2004). No "operation or revenue-producing activity other than the continual raising of new funds" is involved. *Id.* The scheme is named for Charles Ponzi, who was convicted in the late 1920s for the fraudulent schemes he perpetrated in Boston. *Id.*

[4]William Green allegedly received payments from Behrens or his companies in an unidentified amount. (*Id.* at ¶ 4).

[5]Securities and Exchange Commission v. Bryan S. Behrens and National Investments, Inc., United States District Court for the District of Nebraska, Case No. 8:08cv13.

failed to prevent the fraud perpetrated by Behrens. (*Id.* at ¶¶ 22, 27). According to Plaintiffs, "Sunset [as a broker-dealer] was on notice from the SEC to monitor registered representatives for a common type of fraud that the SEC calls 'promissory note fraud.'" (*Id.* at ¶ 28). Plaintiffs further allege that similar allegations against other registered representatives of Sunset put the corporation on "special" notice of this type of fraud. (*Id.* at ¶ 29). Plaintiffs contend that Behrens would not have been able to perpetrate his fraudulent scheme if he had been properly supervised by Sunset and KC Life, and that Sunset and KC Life ignored "numerous red flags that were or should have been apparent to [them], including that Behrens was having the Plaintiffs and other investors incur losses for withdrawal or pay penalties for early withdrawal from annuities or similar investments to move funds from Kansas City Life and other companies to invest with Behrens and National Investments." (*Id.* at ¶¶ 32, 33).

Finally, Plaintiffs allege that Sunset was aware that KC Life named Behrens a General Agent and recognized Behrens and 21st Century with various awards and appointments. (*Id.* at ¶¶ 34-36). Plaintiffs contend that Sunset was aware that the association between Behrens, KC Life, and itself gave Behrens an "aura of authority and trustworthiness" and gave him credibility that he would not otherwise have enjoyed. (*Id.* at ¶ 39). Plaintiffs maintain that the "aura of credibility was important in permitting Behrens to defraud the Plaintiffs." (*Id.*).

The Complaint contains ten Causes of Action. The First Cause of Action alleges that Plaintiffs have been damaged by Behrens's violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The Second and Third Causes of Action allege that Sunset and KC Life are liable for

damages to Plaintiffs under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), having had the power or ability to control Behrens.  The Fourth Cause of Action alleges common law fraud by Behrens.  The Fifth and Sixth Causes of Action allege that Sunset and KC Life, as Behrens's principals, are jointly and severally liable for his common law fraud.  The Seventh and Eighth Causes of Action allege that Behrens violated provisions of the Nebraska Securities Act.  The Ninth and Tenth Causes of Action allege that Sunset and KC Life are jointly and severally liable for Behrens's violations of the state securities act as alleged in the Seventh and Eighth Causes of Action.

Sunset and KC Life move to dismiss Plaintiffs' action under Rule 12(b)(7) for failure to join necessary parties in accordance with Rule 19(a); under Rule 12(b)(6) for failure to state a claim upon which relief may be granted; and for failure to plead with the specificity required by Rule 9(b) and the Private Securities Litigation Reform Act.  (Filing Nos. 23 and 30).  Sunset and KC Life also contend that a Rule 12(b)(6) dismissal of the Complaint would be proper under the doctrine of *in pari delicto*,[6] alleging that "[a]s a director of National Investments, Plaintiff William Green's culpability is at least as great as the defendants." (Filing Nos. 23 and 30).  Sunset's brief in support of its motion was accompanied by evidentiary materials.  (Filing No. 26).

## STANDARD OF REVIEW

For the reasons discussed below, Sunset's and KC Life's Motions to Dismiss will be resolved under Fed. R. Civ. Pro. 12(b)(6), and the arguments under Fed. R. Civ. P. 12(b)(7), 19(a) and 9(b) are, therefore, moot.  A motion to dismiss pursuant to Fed. R. Civ.

---

[6]*In pari delicto* is translated as "in equal fault." Black's Law Dictionary 806 (8th ed. 2004).

5

P. 12(b)(6) challenges the sufficiency of the factual allegations in the Amended Complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

With respect to Plaintiffs' claims under the Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4 (the "PSLRA"), the Court acknowledges that the PSLRA requires a modified approach to motions to dismiss based on its heightened pleading requirements, *see Kushner v. Beverly Enter., Inc.*, 317 F.3d 820, 824 (8th Cir. 2003), and therefore, "'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the [PSLRA]" will be disregarded. *Id.* (citing *Florida State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 660 (8th Cir. 2001)).

## DISCUSSION

**Sunset's Request for Judicial Notice**[7]

In deciding the issues raised by the Motions to Dismiss, the Court is "not precluded in [its] review of the complaint from taking notice of items in the public record." *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986). "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)). "In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion. . . . Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion." *Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). Though "matters outside the pleading" are generally not considered in deciding a Rule 12(b)(6) motion, documents "necessarily embraced by the complaint" are not considered to be "matters outside the pleading." *Enervations, Inc. v. Minnesota Mining and Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004) (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)).

<u>Promissory Notes</u>

The Complaint refers to promissory notes sold to Plaintiffs by Behrens, on behalf of National Investments, but copies of those notes were not attached to the pleading. In

---

[7]KC Life references Sunset's request for judicial notice in its brief filed in support of its Motion to Dismiss (Filing No. 31). The Court's determination of judicial notice with respect to the matters raised by Sunset shall be extended to consideration of the Rule 12 record with respect to KC Life's Motion to Dismiss.

support of its Motion to Dismiss, Sunset has provided the Court with a copy of those promissory notes and has requested that the Court take judicial notice of those notes. (Filing Nos. 25 and 26-2). Plaintiffs do not oppose this request. (Plaintiffs' Brief in Opposition, Filing No. 37). I conclude that the promissory notes are embraced by Plaintiffs' Complaint, and the copies of the notes are properly part of the Rule 12 record.

Corporate Records

In support of its Motion to Dismiss, Sunset has also filed certified copies of National Investments' corporate records found on file with the Nevada Secretary of State,[8] and has requested that the Court take judicial notice of those records. (Filing Nos. 25 and 26-3). Plaintiffs do not object to the Court taking judicial notice of the existence of the records on file with the Nevada Secretary of State. Nevertheless, Plaintiffs argue that the Court is precluded from taking judicial notice of the truth of the matters asserted in the documents. (Filing No. 37).

The lists of officers, directors, and resident agents filed by National Investments are on file with the Nevada Secretary of State and thus are public records that the Court may consider even though they are not mentioned in the pleadings. *See Noble Sys. Corp. v. Alorica Central, LLC,* 543 F.3d 978, 982 (8th Cir. 2008) (holding that the district court did not err in considering the defendant's financing statement on file with the Minnesota Secretary

---

[8] The corporate records at issue consist of certified copies of "Annual List of Officers, Directors and Resident Agent" and "Amended Annual List of Officers, Directors and Resident Agent" for National Investments as well as documentation from the Nevada Secretary of State certifying that the copies are true and exact copies of documentation filed with his office. (Filing No. 26-3).

of State). Therefore, I will grant Sunset's request for the Court to take judicial notice of the exhibits found at Filing No. 26-3.

Lawsuit Against Blunk

In further support of its Motion to Dismiss, Sunset requests that the Court take judicial notice of a Complaint and Jury Demand filed by Behrens, National Investments, and others against Christian Blunk and others in the District Court for Douglas County, Nebraska ("Blunk Complaint").[9]

In their opposing brief, Plaintiffs do not object to the Court taking judicial notice "for the limited purpose of determining what statements are made in the documents" but argue that "the Federal Rules of Evidence and the Eighth Circuit prohibit judicial notice of the truth of the matters asserted therein in the manner proposed by Sunset." (Filing No. 37).

The Blunk Complaint is on file with the District Court for Douglas County, Nebraska, and is a public record that the Court may consider even though it is not mentioned in the pleadings and did not exist at the time of the filing of Plaintiffs' original complaint. *See Noble Sys. Corp. v. Alorica Central, LLC,* 543 F.3d 978, 982 (8th Cir. 2008). Plaintiffs do not object to the Court's consideration of the Blunk Complaint itself. I will grant Sunset's request for the Court to take judicial notice of the exhibit found at Filing No. 26-4.

**Sunset and KC Life's Motions to Dismiss**

Sunset, and to a lesser extent KC Life, dedicate a large portion of their briefs to arguments that Plaintiffs' claims against Behrens should fail and that failure of those claims

---

[9]*Bryan S. Behrens, et al. v. Christian R. Blunk, et al.*, filed in the District Court of Douglas County, Nebraska on December 4, 2008, is found at Doc. 1090 No. 178. (Filing No. 26-4).

9

leads to the logical conclusion that Plaintiffs' claims against Sunset and KC Life, based on secondary or vicarious liability, must fail as a result. In this Memorandum and Order I will address only those claims that pertain to Sunset and KC Life, specifically the Second, Third, Fifth, Sixth, Ninth, and Tenth Causes of Action in the Complaint.

Second and Third Causes of Action

Plaintiffs allege that Sunset and KC Life are jointly and severally liable for the damages resulting from Behrens's violation of the Securities Exchange Act as alleged in the First Cause of Action. Plaintiffs' Second and Third Causes of Action are based on Sunset and KC Life's alleged violation of § 20(a) of the Securities Exchange Act found at 15 U.S.C. § 78t(a). The statute says in relevant part:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Plaintiffs allege that Sunset "actually exercised control over Behrens's general operations" and had the "power and authority to control Behrens with respect to the wrongful conduct" underlying his alleged individual violation of the Securities Exchange Act, thus creating liability for Sunset under § 20(a). (Complaint, Filing No. 1, ¶¶ 46, 48). Plaintiffs further allege that KC Life "directly or indirectly actually exercised control over Behrens's general operations" and had the "ability, directly or indirectly, to exercise control over the conduct by Behrens" underlying his alleged individual violation of the Securities

10

Exchange Act, thus creating liability for KC Life under § 20(a). (Complaint, Filing No. 1, ¶¶ 51, 53).

Plaintiffs allege no facts supporting the conclusory statements that Sunset and KC Life "exercised control," "had the power and authority to control," or had the "ability to exercise control" over Behrens or National Investments with respect to the sale of the promissory notes at issue in this action. There are no allegations that Sunset and KC Life were in any way involved in the transaction between Plaintiffs and Behrens, acting on behalf of National Investments. Nowhere on the face of the notes themselves is either Sunset or KC Life mentioned. Instead, the promissory notes identify National Investments as the borrower. (Filing No. 26-2). There are no allegations that Behrens's affiliation with Sunset or KC Life played any part in the discussions between Behrens and Plaintiffs on or around the time of the signing of the notes. In fact, Plaintiffs allege that the promissory notes sold by Behrens in perpetrating his fraudulent Ponzi scheme referred to National Investments, an entity controlled by Behrens that had no alleged connection to Sunset or KC Life. (Complaint, Filing No. 1, ¶ 14). Plaintiffs merely allege that Behrens, as President and CEO, "operated 21st Century as a branch office of Sunset," which in turn, is a wholly-owned subsidiary of KC Life. (*Id.* at ¶¶ 6, 8).

In their brief in opposition to the motion to dismiss, Plaintiffs argue that their allegations of controlling person liability against Sunset and KC Life under the federal securities laws are sufficient to sustain the Rule 12(b)(6) challenges. Plaintiffs rely heavily on the Eighth Circuit decision in *Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242 (8th Cir. 1993). In *Martin*, a investment broker for the securities firm of Shearson Lehman Hutton, Inc., ("Shearson"), advised the plaintiff to purchase a particular stock, touting it to

be a safe investment with secure dividend and repurchase guarantee. The broker made these representations to the plaintiff, despite the fact that the broker had been instructed by Shearson's management to stop recommending that particular stock, and the broker further directed the plaintiff to purchase the stock through another brokerage house, the broker's future employer. The "guaranteed" re-purchaser of the stock subsequently filed for bankruptcy; payment of the "secure" dividends ceased; and the stock became worthless. *Id.* at 244. The plaintiff brought suit against Shearson alleging violations of federal securities laws, in addition to state law claims. The Eighth Circuit held that the investment broker's "solicitation of the business while she was an employee of Shearson is sufficient to make out a prima facie case of controlling person liability" against Shearson. *Id.* "Shearson's agent solicited the purchase of the stock and misrepresented its nature. Shearson had the ability to discipline [the investment broker's] conduct, and it was this conduct that gave rise to the loss." *Id.*

Plaintiffs' argument is based on their allegations of Behrens's status as a registered representative of Sunset, and Sunset's status as a wholly-owned subsidiary of KC Life. Plaintiffs contend that under the Eighth Circuit's broad interpretation of Section 20(a) controlling person liability[10], they have established a prima facie case for both Sunset's and KC Life's status as "controlling persons" over Behrens under the statute and that the burden now shifts to the Defendants to establish a good faith defense. (Brief in Opposition,

---

[10]Other circuits have taken a more restrictive view of controlling person liability by requiring a showing of "culpable participation" or "actual participation" to establish a person or entity as a controlling person under § 20(a). *See Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 889-90 (3d Cir. 1975); *Gordon v. Burr*, 506 F.2d 1080, 1085-86 (2d Cir. 1974); *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992).

Filing No. 39, p. 7). I disagree. The Complaint does not allege that Behrens was acting as Sunset's employee when he sold the National Investments promissory notes to Plaintiffs. Further, there are no allegations that Sunset had the ability to discipline his conduct. Therefore, I find that Plaintiffs have failed to establish a prima facie case of controlling person liability against Sunset. Thus, Plaintiffs' attempt to establish KC Life's liability through its relationship to Sunset necessarily fails. Moreover, on its own, KC Life's relationship to Behrens is not analogous to Shearson's relationship to its investment broker in *Martin*. Behrens was an agent of KC Life and as such was authorized to sell a product line limited by the Nebraska Department of Insurance, that excluded securities. Behrens's authority to sell KC Life products is unrelated the allegations of securities fraud, and the relationship between Behrens and KC Life is too attenuated to hold KC Life liable for Behrens's alleged securities violations.

Plaintiffs' Complaint fails to state a claim of controlling person liability against Sunset and KC Life under Section 20(a) of the Securities Exchange Act. As such, their Second and Third Causes of Action will be dismissed for failure to state a claim upon which relief can be granted.

<u>Fifth and Sixth Causes of Action</u>

Plaintiffs allege that as Behrens's principals, Sunset and KC Life are jointly and severally liable for the conduct that supports the allegations of fraud against Behrens. Plaintiffs contend that Sunset and KC Life's liability for Behrens's conduct exists under the doctrine of respondeat superior. (*Id.* at ¶¶ 62, 65). Plaintiffs also allege that Sunset and KC Life are liable for Behrens's conduct "because of the apparent authority that [they] had bestowed upon Behrens." (*Id.* at ¶¶ 63, 66).

13

The Nebraska Supreme Court in *Strong v. K&K Inv., Inc.*, 343 N.W.2d 912 (Neb. 1984), provides a concise statement of Nebraska law concerning the doctrine of respondeat superior:

> [I]n order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope of his employment . . . . [T]he conduct of a servant is within the scope of employment if, but only if, it is of a kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master.

*Id.* at 915-916.

Plaintiffs' Complaint contains no allegations that Behrens was employed by either Sunset or KC Life. It is similarly devoid of allegations that Behrens's conduct, that is, selling promissory notes to Plaintiffs on behalf of National Investments, was in any way related to his role as a registered representative for Sunset or as an agent of KC Life, for which he sold a limited line of products that did not include securities. Plaintiffs do not allege that Sunset or KC Life received any direct or indirect compensation as a result of the promissory note transactions or that Behrens led Plaintiffs to believe that Sunset or KC Life had any involvement in or oversight of the transactions. Finally, any allegations that Plaintiffs relied on the broker-dealer relationship between Behrens and Sunset, or his relationship with KC Life, in deciding to invest their money with National Investments are notably absent from the Complaint.

In defending their apparent-authority claims against Sunset and KC Life, Plaintiffs rely on the ruling of the Nebraska Supreme Court in *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 392 N.W.2d 759 (Neb. 1986). In *Draemel*, the plaintiff sued the defendant, RB

& H for alleged acts of conversion committed by their former agent, Gottsch. The court noted that after his discharge, Gottsch continued to have access to the RB & H office and "continued to have use of the telephone, the direct line to the Chicago Mercantile Exchange, and the account cards and risk disclosure forms bearing the name of RB & H." *Id.* at 762. "Apparent or ostensible authority may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent agency." *Id.* at 763. The Complaint is devoid of allegations that either Sunset or KC Life caused Plaintiffs to act upon any "apparent agency." Moreover, the court in *Draemel* also noted that "there is evidence that Draemel thought he was giving Gottsch the money as an agent of RB & H . . . ." *Id.* at 764.[11] Plaintiffs make no such allegations in the Complaint. Thus, Plaintiffs' reliance on the ruling in *Draemel* is misplaced.

Plaintiffs' Complaint fails to state a claim of respondeat superior liability or apparent authority against Sunset and KC Life. As such, Plaintiffs' Fifth and Sixth Causes of Action will be dismissed for failure to state a claim upon which relief can be granted.

Ninth and Tenth Causes of Action

---

[11]Further, in *Steunenberg v. National Progressive Life Ins. Co.,* 292 N.W. 737, (Neb. 1940), the Nebraska Supreme Court held that a life insurance company was not liable for the fraudulent conduct of it's vice-president, Lehman. The court recognized that "[a] principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." *Id.* at 743 (quoting 1 Restatement, Agency, sec. 261). "However, in the case at bar, Lehman did not hold out to plaintiff that she was transacting business with the Insurance company, but made it very clear that she was receiving stock in the Midland National Company, of which he was president, so the rule cited does not apply." *Id.* The allegations in Plaintiffs' Amended Complaint and the promissory notes similarly indicate that Behrens was transacting business by selling securities or promissory notes on the behalf of National Investments, an entity under his control and with no apparent connection to KC Life.

Plaintiffs allege that Sunset and KC Life are jointly and severally liable for damages caused by Behrens's violation of the Nebraska Securities Act found at Nebraska Revised Statutes § 8-1118(3) (Reissue 2007). The Nebraska Act states in relevant part:

> Every person who directly or indirectly controls a person liable under subsections (1)[12] and (2)[13] of this section including . . . every broker-dealer . . . who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Neb. Rev. Stat. § 8-1118(3) (Reissue 2007).

In the introductory paragraphs of the Complaint, Plaintiffs allege that Sunset is a "broker-dealer registered with the United States Securities and Exchange Commission and authorized to conduct business in Nebraska," and that KC Life is a corporation licensed with the Nebraska Department of Insurance. (Filing No. 1, ¶¶ 6, 7). **With respect to the Ninth Cause of Action, Plaintiffs allege that "Sunset is liable as a broker-dealer which directly or indirectly controlled Behrens and materially aided Behrens in his commission of the fraudulent conduct." (*Id.* at ¶ 78). With respect to the Tenth Cause of Action, Plaintiffs

---

[12] Neb. Rev. Stat. § 8-1118(1) provides in part: "Any person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person buying the security from him or her . . . ."

[13] Neb. Rev. Stat. § 8-1118(2) provides in part: "[A]ny investment adviser who employs any device, scheme, or artifice to defraud such person [to whom the investment adviser provides investment adviser services] or engages in any act, practice, or course of business which operates or would operate as a fraud or deceit on such person shall be liable to such person."

allege that KC Life "is liable because it directly or indirectly controlled Behrens and materially aided Behrens in his commission of the fraudulent conduct." (*Id.* at ¶ 82).

The Eighth Circuit recently addressed the issue of the liability of a broker-dealer under a very similar provision of the Arkansas Securities Act. In *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866 (8th Cir. 2008), the plaintiff investors brought an action against an investment services company, Merrill Lynch, for aiding and abetting an individual, David Howell, whom they alleged defaulted on promissory notes that were obtained through false representations.[14] The Court affirmed the district court's dismissal of the plaintiffs' claims against the broker-dealer. "It is not enough for the investors to allege Merrill Lynch was Howell's broker-dealer; they must also allege Merrill Lynch materially aided in the sale of the promissory notes. . . . Because the Complaint is devoid of any allegations which might establish Merrill Lynch materially aided Howell's sale of the promissory notes to the investors, the district court correctly concluded the investors failed to state a claim against the broker-dealer. . . ." *Id.* at 870-71.[15]

---

[14] Although Howell's sale of promissory notes preceded his affiliation with Merrill Lynch, the reasoning in the case, with respect to allegations of aiding and abetting, may still be applied to the facts of the case before this Court.

[15] Plaintiffs cite a district court case from the Sixth Circuit, *As You Sow v. AIG Financial Advisors, Inc.*, 584 F. Supp. 2d 1034 (M.D. Tenn. 2008), in support of his argument that Sunset "provided material aid to Behrens's fraud because the only way that Behrens could operate a business selling securities and providing investment advice was to register as being associated with a broker-dealer and investment adviser such as Sunset," and his argument that KC Life's "permitting Behrens to be registered as associated with Sunset constituted material aid to Behrens." (Plaintiff's Brief, Filing No. 39, pp. 13-14). In *As You Sow*, the plaintiffs alleged that the defendants, AIG and Spelman & Co., were liable under the Tennessee Securities Act for "negligent and grossly negligent supervision and fraud" with respect to the misappropriation of funds by their agents, Stokes and his 1 Point Solutions, LLC, company. *As You Sow,* 584 F. Supp. 2d at 1036. The court held that AIG and Spelman were controlling persons

17

Notably absent from the Complaint in the present case are factual allegations supporting Plaintiffs' conclusory statements that Sunset and KC Life controlled Behrens, either directly or indirectly. The Complaint is devoid of allegations that either Sunset or KC Life took any action that could be construed by the Court as aiding Behrens's sale of promissory notes to Plaintiffs. There simply is nothing in the Complaint alleging that either Sunset or KC Life were in any way involved in the transactions.

Plaintiffs' Complaint fails to state claims that Sunset and KC Life are liable under the Nebraska Securities Act. As such, Plaintiffs' Ninth and Tenth Causes of Action will be dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Motion for Leave to Amend**

Plaintiffs request that the Court grant them leave to file an amended complaint in the event that KC Life's and/or Sunset's Motions to Dismiss are granted. Attached to their motion is a proposed amended complaint (Filing No. 40-2). Plaintiffs argue that the amended complaint states a claim for which relief can be granted[16] so the amendment would not be futile with respect to all of its claims against Sunset and KC Life.

---

based on their indirect control over Stokes because "Stokes could not sell [the fictitious] securities without the Defendants' designation of him as their registered agent." *Id.* at 1045. The court further noted that "[p]laintiffs also allege that the Defendants were aware that Stokes was doing business through 1 Point Solutions." *Id.* at 1037. In the matter before this Court, the Complaint makes no mention that KC Life was aware that Behrens was doing business as National Investments. As such, I do not find the holding of the court in *As You Sow* persuasive in support of Plaintiffs' position.

[16]Plaintiffs qualify their argument by stating that claims contained in their Complaint (Filing No. 1) are sufficient to withstand Sunset and KC Life's Motions to Dismiss. However, in the event that the Court finds otherwise, Plaintiffs request leave of the Court to file an amended complaint.

18

"Futility is a valid basis for denying leave to amend." *United States ex rel. Henry Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009).  I find that Plaintiffs' proposed amendments do not cure the inadequacies in the Complaint as identified and discussed by the Court above.  In their attempt to remedy the deficiencies, Plaintiffs merely offer additional allegations with respect to KC Life's relationship to Sunset in an attempt to make a prima facie case for control person liability.  The additional allegations and legal conclusions offered in the proposed amended complaint fail to establish the necessary nexus between Sunset and Behrens's actions and between KC Life and Behrens's actions that underlie Plaintiffs' various theories of secondary liability.

## CONCLUSION

Plaintiffs' claims against Sunset and KC Life under the various theories of secondary liability fail.  Sunset's and KC Life's Motions to Dismiss are granted on the basis of Federal Rule of Civil Procedure 12(b)(6) and the deficiencies in the Complaint cannot be cured by the filing of the proposed amended complaint.  Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss filed by Defendant Sunset Financial Services, Inc., (Filing No. 23) is granted, with respect to Plaintiffs' claims against Sunset only;

2. The Motion to Dismiss filed by Defendant Kansas City Life Insurance Company, (Filing No. 30) is granted, with respect to Plaintiffs' claims against KC Life only;

3. Plaintiffs William Green and JoAnn Green's claims against Sunset Financial Services, Inc., and Kansas City Life Insurance Company, identified in the Complaint as Counts II, III, V, VI, IX, and X, are dismissed with prejudice; and

4. Plaintiffs William Green and JoAnn Green's Motion for Leave to Amend if the if the Court Grants Defendants' Motions to Dismiss (Filing No. 40) is denied.

DATED this 17th day of July, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge